UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　　　　　Defendant. | Court No.  23-00239 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, the Archer Daniels Midland Company ("ADM"), by and through its undersigned counsel, alleges and states as follows:

## PARTIES

.    1.    Plaintiff, ADM, is a domestic corporation headquartered in Chicago, Illinois. During the period covered by this action, ADM imported phosphate fertilizer from the Russian Federation.

2.    Defendant United States, acting through the U.S. Department of Commerce ("Commerce"), published the Final Results of the first administrative review of the countervailing duty order on Phosphate Fertilizers from the Russian Federation on November 6, 2023.  88 Fed Reg. 76,182.

## JURISDICTION

3.    ADM brings this action pursuant to, and in accordance with, Section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)), contesting the Final

1

Results.  This Court has jurisdiction over this action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

1.   ADM is a United States importer of record of subject merchandise, and it actively participated in the administrative review whose Final Results it contests here through submission of written argument and information.  ADM, therefore, is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  ADM is also a party to the proceeding as defined in 19 C.F.R. § 351.102(b)(29)(ii).  As an interested party that actively participated in the underlying administrative proceeding, Plaintiff has standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

2.   On November 13, 2023, within 30 days after the publication of the Final Results, ADM filed a summons to initiate this action.  ECF No. 1.  Accordingly, this action was commenced within the period specified in 19 U.S.C. §§ 1516a(a)(2)(A) and 1516a(a)(2)(B)(iii).  This Complaint is being filed within 30 days after the date upon which the summons was filed.  Therefore, under 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of this Court, this action has been timely brought.

## STANDARD OF REVIEW

3.   This Court reviews a final determination issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## HISTORY OF THE ADMINISTRATIVE REVIEW PROCEEDING THAT COMMERCE CONDUCTED

4.   On April 7, 2021, Commerce published the countervailing duty order covering

2

phosphate fertilizers from the Russian Federation.  See Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation, 86 Fed. Reg. 18,037 ("CVD Order").

5. Pursuant to Commerce's notice of opportunity to request an administrative review, PhosAgro PJSC, EuroChem (LLC Industrial Group Phosphorite), and The Mosaic Company filed timely requests for Commerce to conduct an administrative review.  See Antidumping or Countervailing Duty Order, Findings or Suspended Investigation; Opportunity to Request Administrative Review, 87 Fed. Reg. 19075 (Apr. 1, 2022); Letter from Hogan Lovells US LLP to Sec'y of Commerce, re: "Phosphate Fertilizers from the Russian Federation - Request for Review – 2020-2021 Countervailing Duty Period" (Apr. 29, 2022); Letter from Squire Patton Boggs (US) LLP to Sec'y of Commerce, re: "Phosphate Fertilizers from the Russian Federation" (Apr. 29, 2022); Letter from WilmerHale to Sec'y of Commerce, re: "*Phosphate Fertilizers from Russia*:  Request for Countervailing Duty Administrative Review" (May 2, 2022).

6. On June 9, 2022, Commerce published a notice initiating the first countervailing duty administrative review of phosphate fertilizers from Russia covering imports during the period from November 30, 2020, through December 31, 2021.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 35,165 ("Initiation Notice").  Specifically, Commerce initiated an administrative review to determine the extent, if any, that two Russian producers, Industrial Group Phosphorite LLC, and Joint Stock Company Apatit ("JSC Apatit") had received countervailable subsidies during the November 30, 2020, through December 31, 2021 period of review ("POR").  87 Fed. Reg. at 35,174.  ADM imported phosphate fertilizer produced and/or exported by JSC Apatit and/or its affiliates during the POR.

3

7. The subject of ADM's Complaint is Commerce's calculation of the "Tier 3" benchmark that the agency used to measure the amount of the countervailable subsidy, if any, that JSC Apatit received from the Russian government that was attributable to that government's alleged provision of mining rights for phosphate rock for Less Than Adequate Remuneration ("LTAR").

8. In its Preliminary Results, Commerce calculated a Tier 3 (i.e., market principles analysis) benchmark to measure the adequacy of remuneration of phosphate rock mining rights allegedly provided by the Russian government to JSC Apatit. Commerce calculated this benchmark by calculating the average of the prices that third countries charged in their export sales of phosphate rock during the POR. To do this, it used two databases that each contained the volume and prices of exports of phosphate rock produced in third countries: (1) IHS Markit's Global Trade Atlas ("GTA"); and (2) United Nations ("UN") Comtrade database. See Phosphate Fertilizers From the Russian Federation, 88 Fed. Reg. 28,505 (May 4, 2023) (preliminary results and partial rescission of the countervailing duty administrative review; 2020-2021). See also accompanying Decision Memorandum for the Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review; 2020-2021: Phosphate Fertilizers from the Russian Federation (Apr. 27, 2023) ("Prelim. Decision Memo"), at 20.

9. The GTA and UN Comtrade databases that Commerce relied upon contained export volumes and values for merchandise exported under the following harmonized tariff system ("HTS") subheadings: (1) 2510.10, which covers "Natural calcium phosphates, natural aluminum calcium phosphates and phosphatic chalk; unground"; and (2) 2510.20, which covers "Natural calcium phosphates, natural aluminum calcium phosphates and phosphatic chalk; ground." Id.

10. Commerce determined that its Tier 3 benchmark calculation should contain an average of the values and volumes of phosphate rock exports from only those countries that produced phosphate rock from igneous ore formations. Most phosphate rock is produced from sedimentary ore formations. However, Commerce excluded from its Tier 3 benchmark calculation the volumes and values of phosphate rock exports from those countries that produced phosphate rock from sedimentary ore formation even though such rock is indistinguishable in quality and other relevant characteristics from rock produced from igneous ore formations.

11. Commerce identified just three countries, i.e., Finland, Brazil, and South Africa, in the GTA database that contained export volumes, values, and resulting average unit values ("AUVs") of phosphate rock produced from igneous ore formations. The UN Comtrade dataset contained the same volume, value, and AUV data for Brazil and South Africa, but not for Finland.

12. To calculate the benefit that JSC Apatit received for the phosphate rock mining rights that the Russian government provided, Commerce calculated JSC Apatit's per-unit cost to mine phosphate rock and then subtracted it from the Tier 3 benchmark price of phosphate rock that it had calculated. It then multiplied the resulting difference by the total amount of phosphate rock that JSC Apatit beneficiated (i.e., produced) from its phosphate ore mining deposits during the POR.[1] Prelim. Decision Memo at 20.

13. Commerce calculated the Tier 3 benchmark per-unit price of phosphate rock by, first, calculating an overall weighted AUV of $237.63/MT for phosphate rock exports from Finland, Brazil, and South Africa, which were contained in the GTA database. See

---

[1] In the mining industry, the term "beneficiation" generally refers to the process of removing materials and impurities from mined ores to increase its value.

Memorandum to The File, re: "Preliminary Results Calculations for Joint Stock Company Apatit" (Apr. 27, 2023), at 7–8, Attach. 2 ("JSC Apatit Prelim. Calc. Memo").  Second, Commerce separately calculated an overall weighted AUV of $482.40/MT for the phosphate rock exports from two countries – Brazil and South Africa – contained in the Comtrade database.  JSC Apatit Prelim. Calc. Memo at 7–8, Attach. 2.

14. The Comtrade database does not report phosphate rock export quantities and values for Finland, whereas the GTA database does include those quantities and values.  Finally, Commerce calculated the <u>mathematical average</u> of the GTA AUV and the Comtrade AUV to derive the Tier 3 benchmark of $360.01/MT (i.e., $237.63 + $482.40 = $720.03 ÷ 2 = $360.01).  Id. at 7–8, Attach. 2.

15. Using this methodology to calculate the Tier 3 benchmark, Commerce calculated a preliminary *ad valorem* subsidy rate of 51.57% for JSC Apatit that was attributable to the provision of mining rights for LTAR.  Prelim. Calc. Memo at 8.  After reviewing Commerce's Tier 3 benchmark calculations and methodology, ADM determined that it was not supported by substantial evidence and was otherwise not in accordance with law.  Accordingly, it timely entered its appearance in the administrative review proceeding on June 7, 2023.

16. On June 12, 2023, ADM submitted its case brief in advance of Commerce's issuance of its <u>Final Results</u>.[2]  ADM contested Commerce's calculation of the Tier 3 benchmark for phosphate rock that Commerce in turn used to calculate the benefit that JSC Apatit received through the Russian government's alleged provision of phosphate rock mining rights for LTAR.  ADM first argued that Commerce's benchmark calculations erroneously "double counted" the

---

[2] Commerce requested that ADM redact certain statements in its case brief and directed it to refile that brief after making the requested redactions, which it did on August 4, 2023.

6

values and volumes of phosphate rock exported from Brazil and South Africa -- which, unlike the data from Finland, appeared in both the GTA and UN Comtrade database -- thereby yielding a highly distorted benchmark. Letter from Trade Pacific PLLC to Sec'y of Commerce, re: "ADM Case Brief" (June 12, 2023) at 4–11.

17.     In addition, ADM argued that Commerce should have included phosphate rock export values, volumes, and resulting AUVs from two other countries, Togo and Iran. ADM demonstrated that these two countries, like Brazil, Finland, and South Africa, exported phosphate rock of the same grade, quality, marketability, and suitability for use in the production of phosphate fertilizer as the phosphate rock that JSC Apatit produced. Id. at 11–16. Using the Togo and Iran data, along with the data for Brazil, Finland, and South Africa, ADM provided an alternative Tier 3 benchmark calculation to Commerce. Id. at 16–19.

18.     ADM's revised benchmark calculation used the identical export volumes, values, and resulting AUVs that Commerce obtained from the GTA database for Brazil, Finland, and South Africa. ADM then added the relevant export volumes, values, and resulting AUVs for: (1) Togo, which were included in the Comtrade database; and (2) Iran, which were included in the GTA database. Id. at 16–19, Exs. 3, 4. In addition, ADM contended that Commerce should have excluded the South African volumes, values, and AUVs for January, February, May, and July through December 2021 because those values were aberrational in that they exceed $1,300 per metric ton. Id. at 19–20.

19.     On June 7, 2023, JSC Apatit timely filed a case brief making various arguments for Commerce's consideration, including that Commerce's calculation of the Tier 3 benchmark was erroneous. Letter from Hogan Lovells (US) LLP to Sec'y of Commerce, re: "JSC Apatit Case Brief" (June 12, 2023).

7

20. On July 5, 2023, ADM timely submitted a rebuttal brief in response to certain arguments made by the petitioner, The Mosaic Company. See Letter from Trade Pacific PLLC to Sec'y of Commerce, re: "ADM Rebuttal Brief." Among other things, ADM argued that Mosaic's proposed benchmark relied on a minuscule volume of exports in 2021 from Brazil, Finland, and South Africa that could not and should not be regarded as representative of world market export prices, as required by law. Id. at 6–7.

21. In addition, ADM contended that exports from Togo and Iran must be included in Commerce's Tier 3 benchmark calculation because phosphate rock processors in four countries imported phosphate rock, with 78% and above BPL content,[3] from countries with both sedimentary ore and igneous ore formations. Id. at 7–11. This evidence further demonstrated that the type of ore formation from which the phosphate rock was produced made no difference to phosphate fertilizer producers in these countries. ADM emphasized that Commerce lacked any evidentiary basis for its finding that only phosphate rock produced from igneous ore deposits was comparable in grade or quality to Russian phosphate rock when the record demonstrated that the same quality of phosphate rock produced from sedimentary ore formations was regarded by phosphate fertilizer producers in four importing countries as interchangeable. Id. at 11–12.

22. On November 6, 2023, Commerce published the Final Results of the first administrative review of the countervailing order on phosphate fertilizers from the Russian Federation. 88 Fed Reg. at 76,182.

23. In the Final Results, Commerce revised its calculation of the Tier 3 benchmark

---

[3] The parties and the record refer interchangeably to the terms "BPL content" (bone content of lime content) and $P_2O_5$ content (phosphorus pentoxide content). It is undisputed that the BPL content can be converted to $P_2O_5$ content using a factor of 0.4576. The BPL content measures the quality of phosphate rock and, therefore, its suitability for processing.

that it used to measure the benefit that JSC Apatit allegedly received from the Russian government's provision of phosphate rock mining rights for LTAR to eliminate its previous "double counting."  Specifically, Commerce relied solely on data from the GTA database to calculate the Tier 3 benchmark.  It excluded data from the UN Comtrade database for Brazil and South Africa because it found a "significant discrepancy in coverage" between the UN Comtrade and GTA sources, and it found the GTA data to be significantly more robust relative to the UN Comtrade data.  See Memorandum to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, re: "Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation" (Oct. 31, 2023) ("Final Decision Memo"), at 26–27.

24. Nevertheless, despite acknowledging that phosphate rock export volume, value, and AUV data from Togo and Iran reflected exports of phosphate rock of a similar $P_2O_5$ (or, alternatively, BPL) content to that of Russia, Commerce excluded that data from its Tier 3 benchmark calculation.  It found that phosphate rock produced in Togo and Iran was not comparable to phosphate rock produced in Russia because it was mined from sedimentary ore deposits rather than from igneous ore deposits.  Id. at 30–32.  For this reason, Commerce declined to include in its Tier 3 benchmark calculation the phosphate rock data from countries with similar $P_2O_5$ content to that of Russia, i.e., Togo and Iran.

25. In justifying the Tier 3 benchmark calculation methodology used in the Final Results, Commerce stated that "the production processes for phosphate rock from sedimentary reserves and igneous reserves differ."  Id. at 30.  On this basis, Commerce concluded that the production of phosphate rock from igneous ore deposits had different production costs compared to production of phosphate rock from sedimentary deposits.  Id. at 31.  Commerce cited no

evidence to support this conclusion. Moreover, Commerce ignored ADM's undisputed evidence that processors of phosphate rock in four countries did not recognize any difference in the quality or suitability for use of phosphate rock produced from sedimentary ore deposits compared to igneous ore deposits. They purchased phosphate rock from processors in countries that produced phosphate rock from both types of deposits.

26. As a result of its changes to the benchmark calculation, Commerce calculated a Tier 3 benchmark of $237.63/MT in the Final Results (compared to the preliminary results benchmark of $360.01/MT) and a final *ad valorem* overall CVD rate for JSC Apatit of 28.50 percent. See 88 Fed. Reg. at 76,183 and Final Results Calculations at Attachment 1. The erroneous Tier 3 benchmark calculation for phosphate mining rights for LTAR accounted for most of this final overall CVD rate.

## PLAINTIFF'S STATEMENT OF CLAIMS

## COUNT ONE

27. Paragraphs 1 through 26 are adopted and incorporated herein by reference.

28. Commerce's Tier 3 benchmark calculation methodology in its Final Results was not supported by substantial evidence and was otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests that the Court:

(a) Enter judgment in Plaintiff's favor;

(b) Hold that Commerce's calculation of the Tier 3 benchmark in the Final Results was not supported by substantial evidence and was otherwise not in accordance with law;

(c) Remand the Final Results to Commerce for redetermination consistent with the Court's opinion, including a recalculation of the final countervailing duty margin for respondent,

JSC Apatit; and

  (d) Provide such other relief as the Court deems just and proper.

            Respectfully submitted,

            /s/ Warren E. Connelly
            Warren E. Connelly
            Robert G. Gosselink
            Jonathan M. Freed
            Kenneth N. Hammer

            TRADE PACIFIC PLLC
            700 Pennsylvania Avenue, SE, Suite 500
            Washington, D.C. 20003
            Tel: (202) 223-3760
            wconnelly@tradepacificlaw.com

            Counsel for the Archer Daniels Midland Company

December 1, 2023