# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY,<br><br>          Plaintiff,<br><br>JOINT STOCK COMPANY APATIT,<br><br>          Plaintiff-Intervenor,<br>          and Consolidated<br>          Plaintiff, and<br><br>THE MOSAIC COMPANY,<br><br>          Consolidated<br>          Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>THE MOSAIC COMPANY,<br><br>          Defendant-Intervenor, and<br>          Consolidated Defendant-<br>          Intervenor, and<br><br>JOINT STOCK COMPANY APATIT,<br><br>          Defendant-Intervenor. | Consol. Court No. 23-00239 |

## DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:
JUSTIN MERHAR
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (240) 956-8573
Email: Justin.Merhar@trade.gov


July 10, 2026

SOSUN BAE
Senior Trial Counsel
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7568
Fax: (202) 514-8624
Email: Sosun.Bae@usdoj.gov


Attorneys for Defendant

**TABLE OF CONTENTS**

BACKGROUND ...........................................................................................................................2

    I.      Administrative Proceedings and First Remand Order .............................................2

    II.    Second Remand Order .............................................................................................3

    III.   Second Remand Redetermination..............................................................................4

ARGUMENT ...............................................................................................................................5

    I.      Standard of Review...................................................................................................5

    II.    Commerce Complied with the Court's Remand Order and Did Not
         Misunderstand the Court's Instructions ...................................................................6

    III.   Commerce's Second Remand Redetermination Is Supported by Substantial
         Evidence and Is in Accordance with Law..................................................................8

        A. Commerce Considered Mosaic's Submitted Evidence and Reasonably
           Found It Did Not Adequately Show That the Sedimentary Versus Igneous
           Distinction Significantly Drives Phosphate Rock Market Prices ......................9

        B. Commerce Considered Mosaic's Evidence Purportedly Showing Evidence
           of Actual Price Differences...............................................................................14

        C. Commerce Reasonably Included Iranian and Togolese Prices in The
           Benchmark Calculation....................................................................................19

CONCLUSION...........................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Allegheny Ludlum Corp. v. United States*,
   112 F Supp. 2d 1141 (Ct. Int'l Trade 2000) ........................................................... 12

*Archer Daniels Midland Co. v. United States*,
   816 F. Supp. 3d 1371 (Ct. Int'l Trade 2026)........................................................*passim*

*Beijing Tianhai Industry Co., Ltd. v. United States,*
   52 F. Supp. 3d 1351 (Ct. Int'l Trade 2015) ........................................................... 14

*Best Mattresses Int'l Co. Ltd. v. United States*,
   622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023)....................................................... 9, 12

*Bethlehem Steel Corp. v. United States*,
   223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ........................................................... 5

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017) ................................................................................. 9

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................ 5, 8

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ................................................................................................. 5

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................................... 5

*Mittal Steel Point Lisas v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008) ............................................................................... 9

*Mosaic Co. v. United States*,
   774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025)......................................................... 20

*Mosaic Co. v United States*,
   589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ......................................................... 18

*QVD Food Co. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011) ............................................................................... 8

*Shandong Huarong Gen. Corp. v. United States*,
   159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ................................................... 6, 8, 14

*Timken Co. v. United States*,
   699 F. Supp. 300 (Ct. Int'l Trade 1988) .................................................................. 8

*Timken Co. v. United States*,
   788 F. Supp. 1216 (Ct. Int'l Trade 1992) ................................................................ 18

*Torrington Co. v. United States*,
   790 F. Supp. 1161 (Ct. Int'l Trade 1992), *aff'd,* 991 F.2d 809 (Fed. Cir. 1993) ...................... 12


**Statutes**

19 U.S.C. § 1516a(b) ..................................................................................... 5


**Regulations**

19 C.F.R. § 351.511(a) .......................................................................... 2, 19, 20


**Administrative Determinations**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   87 Fed. Reg. 35,165 (Dep't of Commerce June 9, 2020) ............................................. 2

*Phosphate Fertilizers From the Russian Federation*,
   88 Fed. Reg. 76,182 (Dep't of Commerce Nov. 6, 2023) ............................................. 2

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

|  |  |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY,<br><br>    Plaintiff,<br><br>JOINT STOCK COMPANY APATIT,<br><br>    Plaintiff-Intervenor,<br>    and Consolidated<br>    Plaintiff, and<br><br>THE MOSAIC COMPANY,<br><br>    Consolidated<br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>THE MOSAIC COMPANY,<br><br>    Defendant-Intervenor, and<br>    Consolidated Defendant-<br>    Intervenor, and<br><br>JOINT STOCK COMPANY APATIT,<br><br>    Defendant-Intervenor. | Consol. Court No. 23-00239 |

## DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by consolidated plaintiff The Mosaic Company (Mosaic), ECF No. 115 (Mosaic Comments) concerning the Department of Commerce's final remand redetermination, ECF No. 112 (Second Remand Redetermination), submitted in accordance with this Court's decision and remand order

in *Archer Daniels Midland Co. v. United States*, 816 F. Supp. 3d 1371 (Ct. Int'l Trade 2026) (Second Remand Order).  Because Commerce's remand redetermination complies with the Court's order and is supported by substantial evidence and otherwise in accordance with law, the Court should sustain and enter judgment for the United States.

**BACKGROUND**

## I.      Administrative Proceedings and First Remand Order

On June 9, 2022, Commerce initiated its first administrative review of the countervailing duty order covering phosphate fertilizers from Russia.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 35,165 (Dep't of Commerce June 9, 2020) (P.R. 6).  In its final results, Commerce determined that Joint Stock Company Apatit (JSC Apatit) had received countervailable subsidies with respect to the provision of mining rights for less than adequate remuneration (LTAR).  *See Phosphate Fertilizers From the Russian Federation*, 88 Fed. Reg. 76,182 (Dep't of Commerce Nov. 6, 2023) (final results), and accompanying Issues and Decision Memorandum (IDM) (P.R. 246) at 13-44.

In making its determination, Commerce—pursuant to 19 C.F.R. § 351.511(a)(2)(iii)— relied on a tier-three analysis of market principles to select the appropriate benchmark data for phosphate rock, considering both the bone phosphate of lime (BPL) content of the rock and whether the rock was produced from sedimentary or igneous reserves in determining what constituted "comparable phosphate rock."  IDM at 29-31, 37-40.  Commerce chose to rely on Global Trade Atlas (GTA) export prices for Finland, Brazil, and South Africa under HTS codes 2510.10 and 2510.20, explaining that these countries, like Russia, mine phosphate rock from igneous deposits, and that those countries' rock contains similar BPL levels to Russia.  *Id.*

2

Mosaic, JSC Apatit, and Archer Daniels Midland Company (ADM), all filed complaints challenging various aspects of Commerce's final results.  On May 6, 2025, the Court issued an opinion and order sustaining Commerce's final results on multiple issues, but remanding with regard to the tier-three phosphate rock benchmark and the tier-two natural gas benchmark. *Archer Daniels Midland Co. v. United States*, 779 F. 3d 1349, 1367 (Ct. Int'l Trade 2025) (First Remand Order).  Regarding the tier-three benchmark for phosphate rock, the Court held that Commerce had failed to support its decision to rely only on benchmark prices from countries producing igneous rock, explaining that Commerce had failed to cite record evidence showing cost differences in production methods for igneous versus sedimentary rock.  *Id.* at 1360.  The Court thus ordered Commerce to either present record evidence showing that the phosphate rock market is significantly driven by the distinction between sedimentary and igneous rock or reconstruct the tier-three benchmark.  *Id.*

On remand, Commerce further explained its reliance on benchmark prices solely from countries producing phosphate rock from igneous ore, citing evidence supporting its finding that the differences in production processes between igneous and sedimentary reserves resulted in significant cost differences.  *See* First Remand Redetermination at 5-7, ECF No. 90.  Commerce also explained that, while it could not exactly quantify the effect of the cost differences between the two types of reserves on world market prices, phosphate rock market prices are still significantly driven by the distinction between sedimentary and igneous rock.  *Id.* at 7-11.

## II.    Second Remand Order

On February 6, 2026, the Court again remanded Commerce's tier-three benchmark for phosphate rock.  In doing so, the Court held that Commerce's benchmark selection was not supported by substantial evidence because Commerce had "not cited evidence that the difference

3

between ore from igneous or sedimentary sources significantly impacts the world market price of beneficiated phosphate rock." *Id.* at 1378.  The Court further explained that "Commerce did not point to any significant record evidence that phosphate rock with similar BPL levels produced from igneous and sedimentary ore reserves have different export prices." *Id.*  The Court found that the record evidence indicated that the "BPL content of phosphate rock, not whether the rock is produced from sedimentary or igneous ore, drives the prices in the phosphate rock market from whence the benchmark comes." *Id.* at 1378-79.  The Court concluded that "on this record, Commerce's only remaining option in constructing the tier-three benchmark is to include world phosphate rock price data that was previously excluded solely on the distinction between igneous and sedimentary ore." *Id.* at 1379.

## III.    Second Remand Redetermination

On remand, Commerce provided parties the opportunity to submit new factual information (NFI) showing the impact (or lack thereof) of igneous versus sedimentary ore on world prices for phosphate rock.  *See* Request for New Factual Information, dated March 20, 2026 (P.R.R. 23).  The parties submitted information in response to Commerce's request.  *See* Petitioner NFI Submission, dated March 27, 2026 (P.R.R. 17, C.R.R. 11-12); JSC Apatit NFI Submission, dated March 27, 2026 (P.R.R. 12-16, C.R.R. 4-9).  JSC Apatit also filed rebuttal information and comments responding to Mosaic's NFI submission.[1]  JSC Apatit Rebuttal NFI, dated March 30, 2026 (P.R.R. 11).

---

[1]  ADM states in its responsive comments that it also filed rebuttal comments to Mosaic's submission.  ADM Comments at 12 n.8, ECF No. 122.  However, our current understanding is that ADM filed this submission to the administrative review record rather than the remand record and, as such, the submission was not included in the administrative record for the remand proceeding.

On April 15, 2026, Commerce issued its second remand redetermination.  *See generally* Second Remand Redetermination.  Commerce found that the new information submitted by JSC Apatit was consistent with the Court's observation that BPL content, rather than the distinction between igneous and sedimentary ore, "drives the prices in the phosphate rock market from whence the benchmark comes."  *Id.* at 7 (quoting Second Remand Order, 816 F. Supp. 3d at 1378-79).  Examining the information submitted by Mosaic, Commerce found that the information did not sufficiently demonstrate that phosphate rock prices are significantly driven by the differences between igneous and sedimentary ore, but rather appears to show differences in costs to *produce* phosphate rock, which the Court had already deemed irrelevant.  *Id.* at 7-8, 14.  Commerce thus constructed a tier-three benchmark which included phosphate rock prices for countries that produced phosphate rock from both igneous and sedimentary ore reserves.  *Id.* at 5.

## ARGUMENT

### I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination."  *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the Court will sustain Commerce's redeterminations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Commerce's determinations may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence, *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620

5

(1966), and "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001).

## II. Commerce Complied with the Court's Remand Order and Did Not Misunderstand the Court's Instructions

Mosaic first contends that Commerce misinterpreted the Court's order as dictating that "Commerce must include the sedimentary-origin prices in the benchmark regardless of what the evidence shows." Mosaic Comments at 3. Not so. The Court held that, "*on this record*, Commerce's only remaining option in constructing the tier-three benchmark is to include world phosphate rock price data that was previously excluded solely on the distinction between igneous and sedimentary ore." Second Remand Order, 816 F. Supp. 3d at 1379 (emphasis added). As such, if Commerce had determined not to reopen the record and solicit new information, it would have been required to construct the tier-three benchmark by including data from countries producing phosphate rock from sedimentary ore.

But Commerce *did* reopen the record, allowing parties to submit new factual information regarding the potential impact of the igneous versus sedimentary ore on world market phosphate rock prices. Commerce then reviewed the information, along with the parties' comments, before ultimately determining that the evidence supported a finding that BPL content—rather than whether the rock is of sedimentary or igneous origin—drives prices in the phosphate rock market, and constructing a tier-three benchmark including countries producing rock of sedimentary origin. Second Remand Redetermination at 7-9, 14-21. But Commerce ultimately "include{ing} world phosphate rock price data that was previously excluded solely on the distinction between igneous and sedimentary ore," Second Remand Order, 816 F. Supp. 3d at

6

1379, does not mean that Commerce read the Court as requiring Commerce to include such data even in the face of the newly submitted record information.  Rather, it is evident from Commerce's citations to the parties' submissions that it examined the new information, then determined—based on the record evidence—that BPL content, not the type of ore, drives world market prices for phosphate rock. Indeed, it would have made no sense for Commerce to solicit new factual information from the parties if it did not intend to assess that information and make its determination based on the totality of the record.

Mosaic also quibbles with Commerce's statement that Mosaic's submission did not "demonstrate that phosphate rock market prices are significantly driven by differences in the beneficiation processes of igneous and sedimentary ores," Mosaic Comments at 3-4 (quoting Second Remand Redetermination at 8), claiming that Commerce's conclusions elide the Court's statement that "it does not consider evidence of differences in the beneficiation processes or costs thereof to be relevant."  *Id.* at 4.  But Mosaic seems to rely on a distinction without a meaningful difference, and its claims that Commerce "mischaracterizes the Court's opinion{}" are unfounded.  *Id.* at 4.  If anything, it is Mosaic mischaracterizing the Court's opinion, as the Court observed that it had remanded Commerce's original determination because "Commerce failed to demonstrate that the phosphate rock market price is significantly driven by the difference in beneficiation processes of sedimentary and igneous phosphate rock."  Second Remand Order, 816 F. Supp. 3d at 1374.

More importantly, while Commerce may have stated that Mosaic's information "does not demonstrate that phosphate rock market prices are significantly driven by differences in the beneficiation processes of igneous and sedimentary ores," Second Remand Redetermination at 8, the removal of the phrase "differences in the beneficiation processes" would not alter

7

Commerce's determination in any consequential way.  This is particularly so given Commerce's ultimate conclusion that "BPL content of phosphate rock, not whether the rock is produced from sedimentary or igneous ore, drives the overall prices in the phosphate rock market{.}"  *Id.* at 14.  Commerce explicitly found that "record evidence points to BPL content as the primary driver of price" and that Mosaic's purported evidence of a price premium for rock derived from igneous ore "is based on a cost narrative that has already been rejected by the Court."  *Id.* at 15.  Thus, Commerce's remand redetermination did not elide the Court's concerns, but squarely addressed them.

### III.    Commerce's Second Remand Redetermination Is Supported by Substantial Evidence and Is in Accordance with Law

Contrary to Mosaic's assertions, Commerce's remand redetermination is supported by substantial evidence.  Commerce, of course, has broad discretion to evaluate the sufficiency of the record evidence, and the Court's role is not to reweigh that evidence but rather to determine whether a reasonable mind could accept such evidence as adequate to support a conclusion.  *See QVD Food Co. v. United States*, 658 F.3d 1318, 1323 (Fed. Cir. 2011) ("Commerce has broad discretion to determine the best available information")*; see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) ("It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency"); *Consol. Edison*, 305 U.S. at 229.  In light of this framework, the Court should sustain Commerce's remand redetermination, even if there is some evidence that appears to support Mosaic's position.  *See Shandong Huarong*, 159 F. Supp. 2d at 718.

**A.      Commerce Considered Mosaic's Submitted Evidence and Reasonably Found It Did Not Adequately Show That the Sedimentary Versus Igneous Distinction Significantly Drives Phosphate Rock Market Prices**

Mosaic contends that Commerce "unlawfully disregarded" record evidence in reviewing the impact of sedimentary versus igneous sources on the price of phosphate rock. Mosaic Comments at 5. But Mosaic's argument fundamentally boils down to a disagreement with Commerce's weighing of the record evidence and the ultimate conclusion that BPL content, not whether the rock was derived from sedimentary or igneous ore, is the significant driver of world market prices. That is not sufficient to overturn Commerce's determination, which was adequately explained and supported by the record. And simply because Commerce did not address every single piece of evidence submitted by Mosaic and JSC Apatit does not render its determination unsupported or otherwise unsustainable, as Commerce "is not required to address every piece of evidence submitted by the parties, and Commerce is presumed to have considered all the evidence in the record absent a showing to the contrary." *Best Mattresses Int'l Co. Ltd. v. United States*, 622 F. Supp. 3d 1347 at 1369 (Ct. Int'l Trade 2023) (citations omitted).

Mosaic first claims that "the product that JSC Apatit actually produces" is "apatite," which purportedly has "a completely different mineral composition" that sedimentary deposits. Mosaic Br. at 6-7. Because Mosaic did not raise this argument in its comments on Commerce's draft remand redetermination, it has failed to exhaust the issue and the Court should not consider it now, particularly as Mosaic does not meet any of the limited exceptions to the exhaustion doctrine. *See, e.g., Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017); *Mittal Steel Point Lisas v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative

9

body not only has erred but has erred *against objection made at the time appropriate under its practice.*") (emphasis in original).

But even if the Court considers this argument, it has little relevance here. As the Court succinctly stated, the "benchmark product is not ore—it is phosphate rock." Second Remand Order, 816 F. Supp. 3d at 1379. As such, it does not matter whether the ore JSC Apatit mines is called "apatite" or simply igneous ore. And Commerce has never disputed that JSC Apatit's phosphate rock is derived from igneous ore. Rather, what matters is whether the distinction between sedimentary and igneous ore is a significant driver of world market prices for phosphate rock. And, as Commerce reasonably concluded, Mosaic has failed to show that it is.

Mosaic complains that Commerce treats phosphate rock derived from igneous and sedimentary ore as "interchangeable" so long as the BPL/$P_2O_5$ level and price for the phosphate rock are usable. Mosaic Comments at 7. According to Mosaic, Commerce conflates interchangeability and substitutability. *Id.* at 10. But, again, this distinction is one without a meaningful difference. Commerce explained that a "purchaser *may* prefer purer/higher quality phosphate rock but will still purchase based on the price and BPL content of the beneficiated phosphate rock rather than geological origin of said rock." Second Remand Redetermination at 18. And, more significantly, Commerce found that "the evidence on the record does not sufficiently demonstrate that the fertilizer market, in particular, is willing to pay a price premium for igneous rock with fewer impurities for refining." *Id.* Mosaic ignores the thrust of Commerce's reasoning—that regardless of whether something is defined and interchangeable or substitutable, the record evidence ultimately does not support a finding that whether phosphate rock is sedimentary or igneous in origin significantly drives prices.

Mosaic next contends that "igneous-origin rock is higher quality than sedimentary-origin rock because of the low levels of unwanted impurities," and thus commands a price premium. Mosaic Comments at 9. But, even if true that the lower levels of impurities in igneous ore result in lower processing or refining costs, Commerce observed that the Court had already deemed "costs and profitability" to not be "relevant for a tier-three, price-based benchmark if the price is driven by another factor. Thus, these are not relevant conditions of purchase or sale. Prices, not costs per se are what is at issue." Second Remand Redetermination at 14 (quoting Second Remand Order, 816 F. Supp. 3d at 1378) (emphasis in original). Commerce further explained that, because "record evidence points to BPL content as the primary driver of price," it need not consider Mosaic's "cost narrative" of a "price premium" on igneous-origin rock in light of the Court's remand order. *Id.* at 15. And "even if there is evidence of a price premium on igneous-origin rock based upon the cost of refinement," Commerce found that "record evidence demonstrates it does not preclude a purchaser of phosphate rock to alternatively source sedimentary-origin phosphate rock, if such a price is competitive with igneous-based phosphate rock or is of a similar BPL grade." *Id.* Put another way, even if there might be a premium on igneous-origin rock due to lower refinement costs, the record evidence does not show that purchasers would not purchase sedimentary-origin rock with similar BPL content as an alternative. Commerce reasonably concluded that the record failed to sufficiently demonstrate that the difference in the costs to refine igneous versus sedimentary rock resulted in the payment of price premiums for igneous rock such that the distinction was a significant driver of world market prices. *Id.* at 16.

In making this argument, Mosaic cites various exhibits from its new submission, alleging that Commerce had unlawfully failed to address this evidence, which Mosaic claims "fairly

detracts" from Commerce's conclusions.  Mosaic Comments at 10.  Mosaic's contention suffers

from multiple flaws.  First, Commerce was not required to explicitly address every exhibit

submitted by Mosaic.  *See, e.g., Best Mattresses*, 622 F. Supp. 3d at 1369.  Simply because

Commerce did not discuss every exhibit does not mean that it "failed to consider that

information" in rendering its determination, because "there is no statutory requirement that the

{agency} must respond to each piece of evidence presented by the parties."  *See Torrington Co.

v. United States*, 790 F. Supp. 1161, 1167-68 (Ct. Int'l Trade 1992), *aff'd,* 991 F.2d 809 (Fed.

Cir. 1993); *see also Allegheny Ludlum Corp. v. United States*, 112 F Supp. 2d 1141, 1165 (Ct.

Int'l Trade 2000) ("there is no statutory requirement that . . . {an agency} explicitly discuss

every piece of record evidence that is put before it in" a proceeding.).  Here, Commerce

recognized the new information Mosaic placed on the record in the context of this argument.

Second Remand Redetermination at 14-15.  It also described the contents of Mosaic's NFI

submission: "research notes, feasibility studies, a declaration from the petitioner, an investor

presentation, and a market explainer, among other exhibits{.}"  *Id.* at 8.  All indicia demonstrate

that Commerce considered the totality of Mosaic's submission in rendering its determination.

In any event, contrary to Mosaic's statement that Commerce failed to address "any of this

evidence," Commerce did explicitly address many of the complained-about exhibits.  For

example, Commerce specifically discussed Mosaic's Exhibit 2,[2] the pricing outlook comparing

the marginal cost of production for sedimentary rock producers versus igneous rock producers,

and Exhibit 5, a declaration submitted by Mosaic that describes purported differences in

production costs and prices between igneous and sedimentary phosphate rock.  Second Remand

---

[2]  Indeed, as we discuss below, Commerce cited Exhibit 2, which is a feasibility study regarding the Lac a Paul Phosphate Project in Canada, in detail elsewhere in its remand redetermination.  Second Remand Redetermination at 19.

Determination at 8-9. In doing so, Commerce concluded that, "{a}lthough these exhibits provide evidence of differences in costs to produce phosphate rock from the two types of reserves, they do not demonstrate that differences in the beneficiation processes of sedimentary and igneous phosphate ore *significantly* drive world market prices for phosphate rock." *Id.* at 8-9 (emphasis added). Commerce also cited Mosaic's Exhibits 3 and 6, finding that they, along with Exhibit 2, were speculative in nature and less indicative of market-representative conditions than contemporaneous pricing data and contracts, which demonstrate that BPL content is the significant driver of phosphate rock prices. *Id.* at 17 n. 71. That Commerce found these exhibits unconvincing does not mean that it failed to consider them.

Indeed, Commerce found that one of the primary exhibits Mosaic relies on—Exhibit 2, which is a feasibility study and market outlook report for the Lac a Paul Phosphate Project in Canada—actually undermines Mosaic's position. While Mosaic claims that this exhibit shows that purchasers will pay a price premium for phosphate rock from igneous ore, Mosaic Comments at 11-13, Commerce observed that the report found the ability "to make a higher quality acid that in turn can be sold for a premium price in specialized markets" to be "too speculative to be taken into account." Remand Redetermination at 19 (quoting Mosaic Exhibit 2 at 87 (C.R.R. 12)). Moreover, the report states that "88 percent of the demand for phosphate rock is for fertilizer applications where higher purity *is not valued*." Mosaic Exhibit 2 at 87 (emphasis added). Thus, if anything, this exhibit demonstrates that the purity of rock from igneous ore *does not* significantly drive world market prices and, to the extent there is a price premium, it is only for specialized markets, not the world market.

Finally, even assuming some record evidence detracted from Commerce's conclusions, this does not render Commerce's determination unreasonable or unsupported by substantial

13

evidence. See *Shandong Huarong*, 159 F. Supp. 2d at 718 ("{T}he Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion."). In light of the totality of the record evidence and the Court's statements in its second remand order that existing record evidence "indicates that the BPL content of phosphate rock, not whether the rock is produced from sedimentary or igneous ore, drives the prices in the phosphate rock market" and that "costs and profitability are not relevant. . . . Prices, not costs <u>per se</u>, are what is at issue." Second Remand Order at 1378, Commerce appropriately determined that BPL content, not the distinction between sedimentary and igneous ore, drives world market prices for phosphate rock. And, even if Mosaic presented some evidence that the ore's sedimentary or igneous origin has an impact on prices of phosphate rock, such a finding would not render the benchmark unreasonable unless it *significantly* impacted the prices. *See* Second Remand Order at 1378; *see also Beijing Tianhai Industry Co., Ltd. v. United States,* 52 F. Supp. 3d 1351, 1369–70 (Ct. Int'l Trade 2015). Commerce thus focused on the correct inquiry—which was to find the significant driver of phosphate rock—and reasonably established its benchmark based on the evidence on the record of this proceeding and the Court's remand order.

B. **Commerce Considered Mosaic's Evidence Purportedly Showing Evidence of Actual Price Differences**

According to Mosaic, Commerce ignored certain evidence that purportedly shows actual price differences between rock sourced from sedimentary versus igneous ore. Mosaic Comments at 17. But Commerce considered the submissions to the record, and found that there was not sufficient evidence demonstrating a difference in actual market prices based on the igneous versus sedimentary distinction. Again, simply because Commerce did not explicitly discuss every piece of evidence does not mean it was not considered. Mosaic contends that, while

14

Commerce "relies largely on the fact that industry reports do not use the words 'sedimentary' and 'igneous' or publish prices separately for igneous and sedimentary origin markets, it is allegedly "well understood in the market" that igneous-origin rock is only produced in specific countries. *See* Mosaic Br. at 17-18. It is true that Commerce observed that "published prices for phosphate rock based on BPL level are on the record, but published prices based on the igneous versus sedimentary rock distinction are not." Second Remand Redetermination at 17. But the Court has seemingly agreed that, based on the published prices on the record, it is BPL content, not whether the rock is derived from sedimentary or igneous ore, that significantly drives world market prices. Second Remand Order, 816 F. Supp. 3d at 1378-79. Even if it was well understood where igneous-origin rock comes from, this does not mean that the rock's origin is what significantly drives the prices.

Mosaic also claims that "JSC Apatit markets its igneous-origin rock as superior … because of lower levels of {impurities}" and that certain industry reports "reference igneous rock prices or the igneous market and distinguish sedimentary prices." Mosaic Comments at 18. But JSC Apatit's marketing of its igneous-origin rock as superior is just that—marketing. Marketing is no indicator of a price difference at all, much less a significant one. Moreover, Commerce acknowledged that "certain of the petitioner's evidence indicates that there are specialized segments of the phosphate rock market willing to pay a premium price for fewer impurities in igneous rock," Second Remand Redetermination at 18, but concluded that as a whole, "the record, including market and pricing data, does not reach the conclusion that the fertilizer market and world prices paid by producers of phosphate fertilizers are affected by this premium." *Id*. Again, as the Court stated, "{p}rices, not costs per se, are what is at issue. If the BPL content of beneficiated rock drives the world market prices, then only difference in BPL content matters in

15

selecting a benchmark."  Second Remand Order, 816 F. Supp. 3d at 1378.  Here, because BPL

content is the significant driver of world market prices, Commerce was not required to exclude

sedimentary-origin countries because certain evidence indicates that specialized segments of the

market may be willing to pay a premium price for igneous rock.

Next, Mosaic claims that JSC Apatit's and ADM's submissions "prove{ } the

sedimentary vs. igneous distinction has a significant impact on export prices for phosphate

rock{.}"  Mosaic Comments at 19.  But Mosaic's argument misunderstands both the record and

Commerce's analysis of it.  Mosaic first points to Appendix 7 of JSC Apatit's submission,

claiming that the data show that export prices for Russian igneous-origin rock were higher than

Togoloese sedimentary-origin rock, even accounting for BPL levels.  *Id.* at 19.  But Appendix 7

does not illustrate what Mosaic claims it does.  *See* JSC Apatit NFI Submission at Appendix 7.

Mosaic points to its own constructed table in an attempt to highlight what it alleges is a price

premium for igneous rock; however, its table suffers from serious flaws.  *See* Mosaic Comments

at 19-20.  First, the table does not include a direct comparison of BPL ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 19.

Furthermore, the sets of data Mosaic seeks to compare stem from ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮  *Id.*  In sum, Mosaic's constructed table of cherry-picked data is a less reliable and

less persuasive source than other record evidence demonstrating that BPL content is the driver of

prices for phosphate rock.

Mosaic also alleges that, while Commerce found evidence submitted by JSC Apatit to be

"consistent with the Court's ruling that BPL content 'drives prices in the phosphate rock market

16

from whence the benchmark comes{,}'" Mosaic Comments at 21 (quoting Second Remand Redetermination at 7 (citation omitted)), Commerce provided "no explanation of what this evidence is." Mosaic Comments at 21. But the very next sentence in the remand redetermination belies Mosaic's contentions, as Commerce explicitly cited Appendix 4 to JSC Apatit's submission as an example of such evidence. Second Remand Determination at 7 ( "in Appendix 4, JSC Apatit provided a contract between itself and one of its customers that demonstrates its own phosphate rock prices are negotiated using a reference Morocco phosphate rock price, with adjustments for phosphorus pentoxide ($P_2O_5$) content only, and without adjustments for igneous versus sedimentary origin."). Commerce also cited Appendix 10 to JSC Apatit's submission as evidence of published prices based on BPL level. *Id.* at 16-17 (citing Appendix 10). Finally, as discussed further below, Commerce cited JSC Apatit's Appendix 1 to show the lack of support for separate markets based on geological origin. *Id.* at 18. Commerce thus amply explained how JSC Apatit's submitted evidence, combined with the evidence already on the record and considered by the Court, shows that BPL content drives world market prices for phosphate rock.

Mosaic takes issue with Commerce's reliance on JSC Apatit's Appendix 1, which contains Global Trade Tracker (GTT) and EU data. Mosaic Comments at 22 (citing JSC Apatit Appendix 1 (P.R.R. 15)). According to Mosaic, these data "are not transaction-level data and they do not identify the buyers and seller{}" and thus "are not probative at all" to the distinction between sedimentary or igneous rock. Mosaic Comments at 23. But Commerce used the GTT data for Norway, Romania, and Lithuania—three countries with major phosphate fertilizer industries—to show the lack of separate markets of sedimentary and igneous origin phosphate rock. Second Remand Redetermination at 18. As Commerce found, the data show "imports of

17

both sedimentary and igneous origin phosphate rock varying substantially over the course of a single year, in some instances being entirely sedimentary-origin phosphate rock imports one year and then entirely igneous origin phosphate rock imports the next." *Id.* This market level review did not require transactional-level data to be probative.

Mosaic next relies on a mischaracterization of a contract between JSC Apatit and a customer to support its position. Mosaic Comments at 23-25. Mosaic claims that the contract shows an adjustment of ███████████ "that accords a price premium to JSC Apatit's igneous phosphate rock." *Id.* at 24. But this claim is nothing more than pure speculation. As Commerce explained, nothing on the face of the contract indicates that the noted adjustment is related to the rock being of igneous origin. Remand Redetermination at 16 (citing JSC Apatit Appendix 4 (C.R.R. 8)). There are any number of reasons that the contract might have contained such an adjustment.

Commerce reasonably concluded, after analyzing both JSC Apatit's and Mosaic's new submissions, as well as the remand order and the evidence already on the record, that BPL levels are the primary driver of world market phosphate rock prices. Even if certain evidence favored Mosaic's position, this does not render Commerce's determination unsupported by substantial evidence. *See Mosaic Co. v United States*, 589 F. Supp. 3d 1298, 1314 (Ct. Int'l Trade 2022) (quoting *Timken Co. v. United States*, 788 F. Supp. 1216, 1220 (Ct. Int'l Trade 1992) ("When Commerce is faced with the decision to choose between two alternatives and one alternative is favored over the other in its eyes, then it has the discretion to choose accordingly if its selection is reasonable.") (cleaned up).

18

C.    Commerce Reasonably Included Iranian and Togolese Prices in The Benchmark Calculation

Finally, Mosaic argues that including the Iranian and Togolese sedimentary-origin rock prices in the benchmark calculation "fully erased the benefits JSC Apatit received under the mining rights for LTAR program" and thus cannot stand. Mosaic Comments at 29. But Commerce having found no benefit under the benchmark based on the existing record does not itself render the determination unreasonable. In making this argument, Mosaic ignores that Commerce is not always required to find a benefit stemming from a financial contribution provided by a foreign government, and misunderstands what analysis was required of Commerce.

In its final determination, Commerce explained that a tier-three benchmark pursuant to 19 C.F.R. § 351.511(a)(2)(iii) was necessary to calculate the potential benefit for the receipt of phosphate mining rights provided by the Russian government. IDM at Cmt. 2c. Commerce found it appropriate to analyze whether the value of the underlying good acquired via the mining rights was market-based, as opposed to analyzing the mining rights *per se*. *Id.* The underlying good here is, of course, phosphate rock. *See* Second Remand Opinion, 816 F. Supp. 3d at 1379 ("the benchmark product is not ore—it is phosphate rock."). Commerce thus "compared world market prices for the underlying good that is conveyed via the mining rights, *i.e.*, phosphate rock, to JSC Apatit's cost buildup for beneficiated phosphate rock." Second Remand Redetermination at 20-21. As Commerce was constructing a world market price, having concluded the primary driver of price was BPL levels, it reasonably focused on known exporters of phosphate rock of a grade, measured by the percentage of BPL, most closely corresponding to the BPL-based grade of Russian phosphate rock. *See* Draft Remand Redetermination at 8-9 (P.R.R. 9). This included sedimentary-origin rock, which is reasonably construed as more representative of world pricing

19

when accounting for BPL level.  Second Remand Order, 816 F. Supp. 3d at 1377 n.6 (observing that Commerce's previous igneous-only benchmark accounted for a miniscule percentage of the total global exports of phosphate rock).

Upon conducting that comparison using world market prices that included sedimentary-origin rock, Commerce concluded that "the absence of a benefit is a result of comparing world market prices for the underlying good that is conveyed via the mining rights to JSC Apatit's cost buildup for beneficiated phosphate rock, based on data available on the record."  *Id.* at 21. Establishing a tier-three benchmark under 19 C.F.R. § 351.511(a)(2)(iii) does not compel a finding that a benefit exists, and Commerce did not, as Mosaic posits, simply "erase" the benefits received by JSC Apatit.  Nor is the fact that Commerce found the absence of a benefit reason for Commerce to exclude sedimentary-origin rock prices from its calculation, or to find Commerce's determination unlawful or unsupported by substantial evidence.  Indeed, in litigation concerning the provision of mining rights for LTAR in Morocco, the Court sustained Commerce's finding of no benefit based on a tier-three benchmark for phosphate rock.  *See Mosaic Co. v. United States*, 774 F. Supp. 3d 1362, 1375-77 (Ct. Int'l Trade 2025) (sustaining Commerce's finding of no benefit based on Commerce's construction a tier-three benchmark for phosphate rock).  Mosaic's complaint about the "erasure" of a benefit amounts to no more than a disagreement with Commerce's decision to include sedimentary-origin rock prices and should not be considered.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment for the United States.

20

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:                                    /s/Sosun Bae
JUSTIN MERHAR                                  SOSUN BAE
Attorney                                       Senior Trial Counsel
U.S. Department of Commerce                    United States Department of Justice
Office of the Chief Counsel for Trade          Civil Division
   Enforcement and Compliance                  Commercial Litigation Branch
1401 Constitution Avenue, NW                   P.O. Box 480
Washington, D.C. 20230                         Ben Franklin Station
Tel: (240) 956-8573                            Washington, D.C. 20044
Email: Justin.Merhar@trade.gov                 Telephone: (202) 305-7568
                                               Fax: (202) 514-8624
                                               Email: Sosun.Bae@usdoj.gov

July 10, 2026                                  Attorneys for Defendant

21

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

|  |  |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY, ) | |
| Plaintiff, ) | |
| JOINT STOCK COMPANY APATIT, ) | |
| Plaintiff-Intervenor, ) and Consolidated Plaintiff, and ) | |
| THE MOSAIC COMPANY, ) | |
| Consolidated Plaintiff, ) | |
| v. ) | Consol. Court No. 23-00239 |
| UNITED STATES, ) | |
| Defendant, ) | |
| THE MOSAIC COMPANY, ) | |
| Defendant-Intervenor, and ) Consolidated Defendant- Intervenor, and ) | |
| JOINT STOCK COMPANY APATIT, ) | |
| Defendant-Intervenor. ) | |

**<u>ORDER</u>**

Upon consideration of the parties' comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained, and it is further

ORDERED that final judgment is entered in favor of the United States.

Date:_____                                   _____
New York, NY                                                                    Judge